IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN C.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, | : | NO.  23-4851 |
| Commissioner of Social Security | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                November 10, 2025

Plaintiff seeks review of the Commissioner's decision denying his application for

disability insurance benefits ("DIB") under Title II of the Social Security Act.  For the

reasons that follow, I conclude that the decision of the Administrative Law Judge

("ALJ") is supported by substantial evidence and affirm the Commissioner's decision.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on January 21, 2022, alleging

disability since January 7, 2022, as a result of high blood pressure and pain in his back,

neck, knees, and hands.  Tr. at 168-69, 192.[2]  His application was denied initially, id. at

69-73, and on reconsideration, id. at 75-79, and he requested an administrative hearing.

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using his first name and last initial.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]The ALJ stated that Plaintiff's application date was January 21, 2022, tr. at 14, although internal documents record an application date of January 20, 2022.  Id. at 50, 57. To be entitled to DIB, Plaintiff must establish that he became disabled on or before his date last insured ("DLI").  20 C.F.R. § 404.131(b).  The parties do not dispute the ALJ's finding that Plaintiff was insured through December 31, 2026.  Tr. at 14; see also id. at 174-78 (Certified Earnings Record), 219 (Disability Report indicating DLI of December 31, 2026).

Id. at 80-81.  After holding a hearing on December 8, 2022, id. at 27-49, the ALJ issued

an unfavorable decision January 3, 2023.  Id. at 12-23.  The Appeals Council denied

Plaintiff's request for review on October 16, 2023, id. at 1-6, making the ALJ's January

3, 2023 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.  Plaintiff

sought review in this court on December 8, 2023, Doc. 1, and the matter is fully briefed

and ripe for review.  Docs. 8, 9 & 12.[3]

## II.    <u>LEGAL STANDARD</u>

The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); <u>Schaudeck v. Comm'r

of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusions that

Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla."  <u>Zirnsak v. Colvin</u>, 777 F.2d 607, 610 (3d Cir. 2014) (quoting <u>Rutherford v.

Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)); <u>see also</u> <u>Biestek v. Berryhill</u>, 587 U.S. 97,

103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion'") (quoting <u>Consol. Edison Co. v.

NLRB</u>, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.

<u>Schaudeck</u>, 181 F.3d at 431.

_____

[3]Defendant has consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c), <u>see</u> Standing Order – In Re: Direct Assignment of Social Security Appeals to
Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020), and Plaintiff
was deemed to have consented by Order dated January 31, 2024.  Doc. 6.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1.   Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.   If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3.   If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.   If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5.   If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age,

education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.    DISCUSSION

### A.    ALJ's Findings and Plaintiff's Claims

In her January 3, 2023 decision, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since January 7, 2022, his alleged onset date.  Tr. at 16.  At step two, the ALJ found that Plaintiff suffers from the severe impairment of polyarthralgia.  Id. at 17.[4]  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  Id.

The ALJ determined that Plaintiff retains the RFC to perform medium work, limited to frequent pushing/pulling with both upper and lower extremities; frequent reaching, handling, fingering, and feeling bilaterally; never climbing ladders, ropes, or scaffolds; occasional kneeling, crawling, and climbing ramps or stairs; never working at unprotected heights; and occasional exposure to extreme cold.  Tr. at 17.  Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a heating, ventilation, air conditioning and refrigeration ("HVACR") technician and steam fitter, id. at 21, but could perform the jobs of laundry

---

[4]The ALJ found other conditions to be non-severe; hypertension, hypercholesterolemia, alopecia, history of squamous cell carcinoma, and anxiety disorder.  Tr. at 17.  Plaintiff does not challenge the ALJ's severity findings.

clerk, auto detailer, and bagger[5].  Id. at 22.  As a result, the ALJ concluded that Plaintiff is not disabled.  Id. at 23.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ (1) failed to properly evaluate the opinion of consultative examiner Dr. Dzurinko, resulting in a flawed RFC assessment, and (2) erroneously evaluated Plaintiff's credibility.  Doc. 8 at 2-13; Doc. 12 at 1-3.  Defendant responds that the ALJ's decision, including her assessment of Plaintiff's RFC and her credibility determination, are supported by substantial evidence.  Doc. 17.

## B. Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on May 1, 1963, and thus was 58 years of age at the time of his alleged disability onset date (January 7, 2022) and 59 at the time of the ALJ's decision (January 3, 2023).  Tr. at 29, 198.  He is 5 feet and 11 inches tall and weighs between 148 and 165 pounds.  Id. at 43, 192.  He lives alone with his wife.  Id. at 32.  Plaintiff completed the twelfth grade and received specialized training as a steamfitter.  Id. at 34, 193.  He has past relevant work as a foreman at a mechanical services company and a casino, performing service and maintenance on industrial equipment and heating and air conditioning.  Id. at 34-36, 193, 201.

---

[5]According to the hearing transcript, the VE called the job "cart attendant," tr. at 46, and the ALJ identified the job as "[p]ark attendant."  Id. at 22.  However, the Dictionary of Occupational Titles ("DOT") code number identified by both the VE and the ALJ, 920.687-014, corresponds to the job of "bagger (retail trade)" or "grocery packer," which includes carrying and placing groceries into shopping carts and collecting carts from parking lots and surrounding areas.  See DOT 920.687-014, https://occupationalinfo.org/92/920687014.html// (last visited Oct. 18, 2025).  I will refer to the job as "bagger."

At the administrative hearing, Plaintiff testified that he retired in January 2022 when he developed "almost unbearable" pain in his neck, back, shoulders, joints, and knees. Tr. at 36. He did not seek medical treatment for his pain and only goes to his doctor for annual exams, which he began about 10 years prior, and more recently to refill a prescription to treat high blood pressure. Id. at 38. He takes Tylenol or Advil when he experiences pain or swelling in his joints, and he exercises and flexes to reduce stiffness or tingling sensations after sleeping. Id. at 42. When asked about his limited medical treatment, Plaintiff stated, "I guess I never really felt that I had time for it, you know, and I needed a paycheck. I got up and I went to work, and you . . . power through it." Id. at 37; see also id. at 38 ("[J]ust try to provide for my family, and I guess that's the gist of it, that's just -- I just got up and did.").

Plaintiff described his typical day as having lunch with his wife, caring for an elderly dog, sharing household chores with his wife, fishing once a week in the summer, and taking walks. Tr. at 39-41. He also testified that he drives daily to provide about 4 to 5 hours of caregiving for his mother,[6] which consists of "general care" such as preparing breakfast, making sure she takes her medication, and making sure she moves around. Id. at 32-33.[7]

---

[6]Plaintiff explained that his mother had fallen several times, was recently discharged from the hospital, and uses a walker, and that she has dementia. Tr. at 33.

[7]Plaintiff's testimony is largely consistent with his Function Report. Tr. at 205-12. For example, Plaintiff indicated in the Function Report that he has limitations related to raising his arm, kneeling, lifting what he formerly could lift, and pain. Id. at 210. He has no problems with self-care and can exercise, cook, clean, do yard work, maintain the house, drive, shop, manage finances, use a computer, read, watch television, fish, socialize, check on his mother's needs every other day, and walk the dog. Id. at 205-10.

On questioning by the ALJ, the VE testified that Plaintiff's past relevant work as an HVACR technician was skilled and medium, performed medium to heavy, and his work as a steam fitter was skilled and heavy.  Tr. at 44.  Based on the hypothetical posed by the ALJ with the limitations included in the ALJ's RFC assessment, see supra at 4, the VE testified that such an individual could not perform Plaintiff's past relevant work but could perform the jobs of laundry clerk, auto dealer, and bagger.  Id. at 45-46.  If the individual would be absent from work for two days per month, the individual would not be able to maintain full-time work.  Id. at 47.  On questioning by counsel, the VE testified that medium exertional work would be eliminated if the hypothetical individual could handle only occasionally, and that if the person could stoop only occasionally, it would eliminate some medium exertional jobs, but not all.  Id.  Finally, if the individual could occasionally lift 50 pounds and frequently lift 20 pounds, and could sit for 7 -to- 8 hours, stand 1 -to- 2 hours, and walk up to 1 hour in a workday, the VE testified that such an individual would be limited to "restricted light or even sedentary work."  Id. at 48.

### C.    **Medical Evidence Summary**

The medical record is sparse, consistent with Plaintiff's limited medical treatment. Therefore, the record consists of few primary care records, none of which include observations of Plaintiff's mobility or assessments of his physical or mental function, as

---

He also reported that he can finish tasks, follow instructions well, handle stress, adapt, and get along with others except authority figures.  Id. at 210-11.  Pain wakes him up frequently at night and impacts his ability to lift and stand, while repetitive activities impact his ability to stand and walk on a regular basis.  Id. at 205-06.

well as one consultative examination performed by David Dzurinko, M.D., and consultative record reviews.[8]

On May 13, 2021, Plaintiff presented to his primary care provider for follow-up treatment for hypertension, high cholesterol, and anxiety. Tr. at 281. The provider noted that Plaintiff was "feeling well" and described his hypertension and anxiety as "stable." Id. at 284. Plaintiff received refills of finasteride, hydrochlorothiazide, and losartan. Id. at 281.[9]

On April 7, 2022, David Dzurinko, M.D., performed a consultative examination. Tr. at 258-62. Plaintiff chiefly complained of chronic neck, back, shoulder, arm, hand, and finger pain, rated 7/10 and increasing to 8 or 9/10 with too much activity, and also reported high blood pressure, onset 2017. Id. at 258. Plaintiff denied discussing his chronic pain with his primary care provider and thought he had osteoarthritis, but Dr. Dzurinko noted that there were no x-rays to confirm a diagnosis. Id. Plaintiff also reported neuropathic symptoms such as pins and needles, numbness, and tingling in his upper extremities, left greater than right, "which is suspected to be from degenerative

---

[8]Because Plaintiff's claims relate to the ALJ's consideration of Dr. Dzurinko's opinion regarding Plaintiff's physical RFC, the medical evidence summary will not include the State agency consultants' opinions relating to Plaintiff's alleged mental impairments. See tr. at 54-55 (initial determination - Emanuel Schnepp, Ph.D.), 61 (reconsideration determination - Peter Garito, Ph.D.).

[9]Finasteride is used to treat hair loss in men. See https://www.drugs.com/finasteride.html (last visited Oct. 21, 2025). Hydrochlorothiazide is a thiazide diuretic (water pill) that prevents the body from absorbing too much salt. See https://www.drugs.com/hydrochlorothiazide.html (last visited Oct. 21, 2025). Losartan is used to treat high blood pressure. See https://www.drugs.com/lostartan.html (last visited Oct. 21, 2025).

joint diseases from [the] neck." Id. at 259.[10]  He stated that his joint pain is worse going up and down ladders.  Id.

Upon examination, Plaintiff exhibited normal gait, difficulty walking on heels and toes due to pain, squat at approximately 50% of full, and stance with a mild anterior lumbar flexion.  Tr. at 260.  He did not need help getting on or off the examination table, and he could rise from a chair without difficulty.  Id.  Musculoskeletal examination revealed no abnormality in Plaintiff's thoracic spine, no evident joint deformity, and stable joints, with negative straight-leg testing supine and seated.  Id. at 261.  He had tenderness in his bilateral knees, wrists, and hands, and shoulder pain with range of motion.  Id.  He had no sensory deficit to pinprick, pain, or vibration, and 4/5 strength, in his bilateral upper and lower extremities, and his extremities showed no cyanosis, clubbing, edema, pulse abnormality, atrophy, or significant varicosities or trophic changes.  Id.  His hand and finger dexterity were intact, and his grip strength was 4/5 bilaterally.  Id.  X-rays of Plaintiff's left hand, left knee, and lumbar spine performed the day of Dr. Dzurinko's examination were normal, with no acute fracture/dislocation of the hand and knee and no acute fracture/subluxation of the lumbar spine.  Id.; see also id. at 273-75 (x-ray results).  Dr. Dzurinko diagnosed Plaintiff with polyarthralgia and suspected osteoarthritis but with no confirmatory x-rays or medical opinions; swelling in

---

[10]It is unclear whether Plaintiff, Dr. Dzurinko, or some other medical provider suspected the symptoms to be caused by a degenerative joint disease in the neck.

the joints; and chronic hypertension.  Id. at 262.  The doctor assessed Plaintiff's prognosis as "Fair to guarded, pending x-rays, but suspicious for arthritis."  Id.[11]

In a contemporaneous medical source statement of Plaintiff's ability to perform work-related physical activities, Dr. Dzurinko opined that Plaintiff could lift and carry up to 20 pounds frequently and up to 50 pounds occasionally.  Tr. at 263.  At one time without interruption, Plaintiff could sit for 1 hour, stand for 20 minutes, and walk for 1 - to- 2 minutes.  Id. at 264.  In total over an 8-hour workday, he could sit for 7 -to- 8 hours, stand 1 -to- 2 hours, and walk for 30 minutes -to- 1 hour.  Id.  He did not require the use of a cane to ambulate.  Id.  Plaintiff could frequently reach, finger and feel, and occasionally handle and push/pull, with either hand, and he could frequently operate foot controls bilaterally.  Id. at 265.  He could occasionally climb stairs and ramps, balance, and stoop, and never climb ladders or scaffolds, kneel, crouch, or crawl.  Id. at 266. Finally, Dr. Dzurinko opined that Plaintiff could never tolerate extreme cold; occasionally tolerate unprotected heights, moving mechanical parts, and operating a motor vehicle; and frequently work around all other environmental conditions.  Id. at 267.

On May 5, 2022, State agency consultant Glenda Ann Cardillo, M.S., performed a review of Plaintiff's medical records as part of the initial disability determination.  Tr. at 51-53.  Dr. Cardillo found no record support for any severe physical impairments, and opined that Plaintiff was not disabled.  Id. at 53, 56.  On August 8, 2022, State agency consultant Roman Oleh Bilynsky reviewed Plaintiff's medical record at the

---

[11]Dr. Dzurinko's reference to "pending x-rays" is ambiguous, as he referenced x-rays performed that day.  The record contains no other x-ray results.

reconsideration level of review, similarly found no support for any severe physical impairments, id. at 59-60, and similarly found that Plaintiff was not disabled.  Id. at 63. Both State agency consultants opined that Dr. Dzurinko overestimated the severity of Plaintiff's restrictions/limitations.  Id. at 55, 62.

On September 23, 2022, in a routine follow-up with his primary care provider, Plaintiff again reported "feeling well," and the provider again assessed Plaintiff's hypertension and anxiety as "stable" and maintained his medications.  Tr. at 245-46.

**D.    Plaintiff's Claims**

As previously noted, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of consultative examiner Dr. Dzurinko, and erroneously evaluated Plaintiff's credibility. Doc. 8 at 2-13; Doc. 12 at 1-3.

1.    Consideration of Opinion Evidence

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Dr. Dzurinko, resulting in a flawed RFC assessment.  Doc. 8 at 2-11; Doc. 12 at 1-2. Defendant responds that the ALJ properly considered the doctor's opinion and maintains that substantial evidence supports the ALJ's RFC assessment.  Doc. 9 at 5-12.

The ALJ's consideration of medical opinion evidence is governed by regulations which focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 404.1520c(a).  The regulations list the factors to be utilized in considering

medical opinions:  supportability, consistency, treatment relationship including the length

and purpose of the treatment and frequency of examinations, specialization, and other

factor including familiarity with other evidence in the record or an understanding of the

disability program.  Id. § 404.1520c(c).  The most important of these factors are

supportability and consistency, and the regulations require the ALJ to explain these

factors, but do not require discussion of the others.  Id. § 404.1520c(b)(2).  The

regulations explain that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) . . . , the more persuasive the medical opinions . . .  will be."  Id.

§ 404.1520c(c)(1).  In addition, "[t]he more consistent a medical opinion(s) . . .  is with

the evidence from other medical sources and nonmedical sources . . . , the more

persuasive the medical opinion(s) . . . will be."  Id. § 404.1520c(c)(2).

   In addition, "[t]he ALJ must consider all the evidence and give some reason for

discounting the evidence she rejects."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.

1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a

conflict in the evidence, the ALJ may choose which evidence to credit and which

evidence not to credit, so long as she does not "reject evidence for no reason or the wrong

reason."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also Plummer,

186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

   The RFC is the most a claimant can do despite his limitations.  20 C.F.R.

§ 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider limitations and

restrictions imposed by all of an individual's impairments, including those that are not

severe.  Id. § 404.1545(a)(2); see also Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121

(3d Cir. 2000) ("In making [the RFC] determination, the ALJ must consider all evidence

before [her].").  However, the ALJ is not required to include every impairment a clamant

alleges.  Rutherford, 399 F.3d at 554.  Rather, the RFC "'must accurately portray' the

claimant's impairments," meaning "those that are medically established," which "in turn

means . . . a claimant's *credibly established limitations*."  Id. (emphasis in original)

(quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984) and citing Burns v.

Barnhart, 312 F.3d 113, 123 (3d Cir. 2002); Plummer, 186 F.3d at 431).

Here, Plaintiff argues that the ALJ failed to properly consider the opinion of Dr.

Dzurinko, a one-time consultative examiner.  The ALJ found Dr. Dzurinko's opinion

"partially persuasive," tr. at 20, and explained:

> There is no basis for such reduced standing and walking
> anywhere in the record or in Dr. Dzurinko's report.
> [Plaintiff] had a normal gait and strength was only mildly
> reduced.  Of note, the opinion that [Plaintiff] can walk one to
> two hours at one time and a total of 30 minutes in an eight-
> hour workday is internally inconsistent as the "at one time" is
> significantly more than the "total" in an eight-hour workday.
> Additionally, the limitation to only occasional handling,
> pushing, and pulling is not supported, as the findings of 4/5
> strength in upper extremity are more consistent with
> frequently than occasionally using the hands for
> handling/pushing/pulling.  Moreover, the opinion of
> "occasionally" handling, pushing, and pulling is also not
> supported by Dr. Dzurinko's findings of intact hand and
> finger dexterity and ability to zip, button, and tie.  The
> opinion that [Plaintiff] can never crawl, crouch, kneel or be
> exposed to extreme cold is neither supported, as his exam's
> findings of 4/5 strength in lower extremity, and slightly
> limited range of motion in lumbar flexion-extension, left hip

> forward flexion, and left knee flexion-extension are more
> consistent with occasionally performing such maneuvers.
> However, I clarify that I am assigning a limitation for "never"
> climb ladders/ropes/scaffolds to give [Plaintiff] the most
> benefit of the doubt.

Id.

Plaintiff first argues that the ALJ misconstrued Dr. Dzurinko's opinion regarding Plaintiff's ability to walk, causing the ALJ to identify a non-existent inconsistency in the doctor's report. Doc. 8 at 5-6. I agree. As previously explained, Dr. Dzurinko opined that Plaintiff could walk for 1-to-2 minutes without interruption, and for a total of 1 hour in an 8-hour workday. Id. at 264. However, in the language quoted above, the ALJ mistakenly stated that Dr. Dzurinko found Plaintiff capable of walking 1-to-2 hours at a time and a total of 30 minutes in an 8-hour workday. Id. at 20.[12] The ALJ's misreading of the form caused her to err in finding Dr. Dzurinko's opinion internally inconsistent.

However, this error does not warrant remand under the totality of the circumstances because the ALJ identified other reasons not be persuaded by the limitations in Plaintiff's ability to walk. For example, the ALJ stated that she found "no basis for such reduced standing and walking anywhere in the record or in Dr. Dzurinko's report." Tr. at 20. Indeed, neither Dr. Dzurinko's findings, the sparse medical record, nor Plaintiff's self-reported activities support significant limitations in walking. Records from Plaintiff's primary care provider indicate follow-up visits for hypertension, high cholesterol, and anxiety, and not for difficulty walking. Tr. at 245-46, 281. Plaintiff

---

[12]Defendant concedes that the ALJ misread this aspect of Dr. Dzurinko's opinion. Doc. 9 at 10.

testified that he goes for walks, does not need an assistive device, and takes over-the-counter medications when needed for pain, id. at 41, and he told Dr. Dzurinko that his chronic joint pain is particularly bad going up and down ladders, not when walking, and that he can walk "a block or two" before needing to rest.  Id. at 259.  Upon examination, Dr. Dzurinko noted that Plaintiff had difficulty walking on heels and toes due to pain and had tenderness in his bilateral knees, but also noted a normal gait, mildly abnormal stance, no difficulty rising from a chair or getting on and off an examination table, no spinal abnormality, no joint deformity, stable joints, no sensory deficit, and no cyanosis, clubbing, edema, pulse abnormality, atrophy, or significant varicosities or trophic changes.  Id. at 260-61.  Dr. Dzurinko found Plaintiff had 4/5 strength in his bilateral legs -- which the ALJ characterized as "only mildly reduced" strength -- and x-rays of Plaintiff's left knee and lumbar spine were normal.  Id. at 261, 273-75.  In sum, nothing in Dr. Dzurinko's findings calls for a limitation to walking 2 minutes at a time or a total of 1 hour a day.  As a result, the ALJ's error does not undermine her overall consideration of Dr. Dzurinko's opinion regarding Plaintiff's ability to walk.

In related arguments, Plaintiff asserts that the ALJ's analysis is based on "cherry-picked findings" and her "lay impression," Doc. 8 at 6-8, and that the ALJ's RFC determination is flawed because it did not include all of Dr. Dzurinko's proposed limitations, nor did it mirror the opinion of any other medical source.  Id. at 9-11.  These related arguments are without merit.

Governing regulations provide that RFC determinations are to be made by the ALJ, see 20 C.F.R. § 404.1546(c), and that in doing so, the ALJ need not "defer . . . to

any medical opinion." Id. § 404.1520c(a).  Consistent with this language, the Third

Circuit has held that "[t]he ALJ – not treating or examining physicians or State agency

consultants – make the ultimate disability and RFC determinations." Chandler v.

Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citations omitted); see also

Brown v. Astrue, 649 F.3d 193, 196 n.2 (3d Cir. 2011) ("The law is clear . . . that the

opinion of a treating physician does not bind the ALJ on the issue of functional

capacity."); Mays v. Barnhart, 78 F. App'x 808, 813 (3d Cir. 2003) (in making an RFC

determination, the ALJ "is not required to seek a separate expert medical opinion").

Thus, there is no requirement that an ALJ incorporate into an RFC assessment only

limitations which have been found by a medical expert.  See Titterington v. Barnhart, 174

F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made

the particular findings that an ALJ adopts in the course of determining an RFC."); see

also Chandler, 667 F.3d at 362 ("[T]he ALJ is not precluded from reaching RFC

determinations without outside medical expert review of each fact incorporated into the

decision.").

      Here, I find that the ALJ's RFC assessment comports with the regulations and

Third Circuit precedent.  It is worth noting that although both State agency medical

experts reviewed Plaintiff's medical record, including Dr. Dzurinko's examination report,

and found that Plaintiff had no severe impairments, the ALJ disagreed and found that Dr.

Dzurinko's report supported the presence of severe impairments.  Tr. at 20.  Further,

although Dr. Dzurinko is a one-time examining consultant and not a treating physician,

the ALJ adopted most of the doctor's limitations, including lift/carry limitations

consistent with medium work; limitations in the frequency of his ability to reach, finger, feel, climb stairs, ramps, ladders, ropes, and scaffolds; and no work at unprotected heights and only occasional exposure to extreme cold.  Tr. at 17, 265-67.  To the extent Dr. Dzurinko proposed more restrictive limitations as to standing and walking, the ALJ explained why the more restrictive limitations were not supported by the record as a whole or the doctor's own generally unremarkable findings, for the reasons previously discussed.  In doing so, the ALJ did not "cherry-pick" or insert her lay opinion, but instead provided reasons for finding certain aspects of Dr. Dzurinko's opinion to be inconsistent or unsupported by the record, consistent with the regulations.  See 20 C.F.R. §§ 404.1520(c)(1) (medical opinions that are more supported by relevant objective medical evidence and supporting explanations are more persuasive), 404.1520(c)(2) (medical opinions that are more consistent with evidence from other medical and non-medical sources are more persuasive).

In sum, the governing regulations prohibit the ALJ from deferring or giving evidentiary weight to any medical opinions, and instead require the ALJ to evaluate medical opinions focusing on supportability and consistency.  20 C.F.R. § 404.1520c(a). After summarizing Plaintiff's testimony, other non-medical evidence, and the sparse medical record, see tr. at 17-21, the ALJ evaluated Dr. Dzurinko's opinion and explained why she found it only partially persuasive.  Thus, I find no error in the ALJ's consideration of Dr. Dzurinko's opinion.

2.    Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ's credibility determination is not supported by

substantial evidence.  Doc. 8 at 11-13; Doc. 12 at 2-3.  Defendant responds that

substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints.

Doc. 9 at 12-15.

Social Security regulations require a two-step evaluation of subjective symptoms:

(1) a determination as to whether there is objective evidence of a medically determinable

impairment that could reasonably be expected to produce the symptoms alleged; and

(2) an evaluation of the intensity and persistence of the pain or symptoms and the extent

to which they affect the individual's ability to work.  20 C.F.R. § 404.1529(b) & (c);

Social Security Ruling ("SSR") 16-3p, Titles II and XVI:  Evaluation of Symptoms in

Disability Claims, 2016 WL 1119029, at *3-4 (Mar. 16, 2016).  Third Circuit case law

does not require an ALJ to accept a plaintiff's complaints concerning her symptoms, but

rather requires that they be considered.  See Chandler, 667 F.3d at 363.  An ALJ may

disregard subjective complaints when contrary evidence exists in the record, see Mason,

994 F.2d at 1067-68; see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999)

("Allegations of pain and other subjective symptoms must be supported by objective

medical evidence.").  SSR 16-3p requires the ALJ to consider all the evidence in

determining the intensity, persistence, and limiting effects of the claimant's symptoms.

2016 WL 1119029, at *4-7.  In addition to the medical evidence, SSR 16-3p requires the

ALJ to consider the claimant's daily activities; the location, duration, frequency, and

intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms;

the type, dosage, effectiveness, and side effects of medication the claimant uses to

alleviate the symptoms; treatment, other than medication, the claimant has received; other

measures the claimant has used to alleviate the symptoms; and any other relevant factors.

Id. at *7; see also 20 C.F.R. § 404.1529(c)(3) (listing same factors).

      Here, the ALJ addressed Plaintiff's subjective complaints as follows:

> After careful consideration of the evidence, I find that
> [Plaintiff's] medically determinable impairment could
> reasonably be expected to cause the alleged symptoms;
> however, [Plaintiff's] statements concerning the intensity,
> persistence and limiting effects of these symptoms are not
> entirely consistent with the medical evidence and other
> evidence in the record for the reasons explained in this
> decision.
>
> As for [Plaintiff's] statements about the intensity, persistence,
> and limiting effects of his symptoms, they are inconsistent
> because there has been no treatment, even conservative, for
> his polyarthralgia.

Tr. at 19. After discussing the "sparse" medical record and Dr. Dzurinko's assessment,

the ALJ continued:

> The totality of the evidence supports very few limitations as
> there has actually been no specific treatment for [Plaintiff's]
> polyarthralgia. He has not had any physical therapy; he is not
> in pain management; and there are no imaging studies to
> support abnormalities.

Id.

      Plaintiff argues that the ALJ's evaluation of Plaintiff's subjective complaints is

inadequate because the ALJ "did not acknowledge" Plaintiff's testimony that he did not

seek treatment for polyarthralgia because he felt he did not have time to seek treatment

and would just "power through" his symptoms, Doc. 8 at 12, and that the ALJ therefore

relied on "speculative inferences" when assessing Plaintiff's testimony. Doc. 12 at 2.

Plaintiff is incorrect in this characterization of the ALJ's assessment of Plaintiff's

testimony. In her narrative summary, the ALJ explicitly noted Plaintiff's testimony that

he retired from his job as an HVACR technician due to "unbearable pain," that he had

limitations in his ability to walk, stand, and grip with his hands, and that he did not seek

medical treatment because he did not have time to seek physical therapy, "he always

pushed himself to work despite his pain and that it all caught up with him," and "[h]e

needed to work, so he did." Tr. at 18. Plaintiff offered no reason for not seeking

treatment after he ceased working. A claimant's treatment is among the above-listed

factors in SSR 16-3p, and accordingly the ALJ's reference to Plaintiff's lack of treatment

is a legitimate factor in assessing credibility. See also 20 C.F.R. §§ 404.1529(c)(2)

("Objective medical evidence . . . is a useful indicator . . . in making reasonable

conclusions about the intensity and persistence of your symptoms and the effect those

symptoms, such as pain, may have on your ability to work."), 404.1529(c)(3)(iv) (type,

dosage, effectiveness, and side effects of medication is a factor to consider),

404.1529(c)(3)(v) (treatment other than medication is a factor to consider).

 Similarly, the ALJ discussed Plaintiff's considerable range of daily activities,

including care for his elderly mother and his dog and his ability to drive, cook, clean,

maintain his yard and home, shop, fish, walk, take care of his finances, and socialize. Tr.

at 18. Plaintiff's ability to perform these activities, among others, is a valid consideration

when assessing a claimant's subjective complaints. See SSR 16-3p; see also 20 C.F.R.

§ 404.1529(c)(3)(i) (daily activities is a factor to consider).   Thus, the ALJ's

consideration of Plaintiff's subjective complaints is supported by substantial evidence.

## IV.   <u>CONCLUSION</u>

The ALJ properly evaluated the opinion evidence, and her consideration of

Plaintiff's subjective complaints is supported by substantial evidence.  Therefore, I will

affirm the Commissioner's decision.

An appropriate Order follows.